# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Scott, 2012 IL App (4th) 100304**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY L. SCOTT, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0304 |
| Filed | February 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for possession of methamphetamine and sentence to 10 years' imprisonment, the appellate court rejected his contentions that he was not proved guilty beyond a reasonable doubt and that his sentence was impermissibly disparate with respect to his codefendant's sentence, since, *inter alia*, the evidence supported a finding of defendant's constructive possession of the methamphetamine recovered in a search of his residence, and the decision in *Milton* cited by defendant in support of his disparate-sentences argument did not change the general rule that the two-year sentence imposed following his codefendant's guilty plea did not form a valid basis of comparison with the sentence imposed on defendant following his trial. |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 09-CF-131; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and John M. McCarthy, all of State Appellate Defender's Office, of Springfield, for appellant.

Benjamin L. Goetten, State's Attorney, of Jerseyville (Patrick Delfino, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Justices Steigmann and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1    In February 2010, a jury found defendant, Jeffrey L. Scott, guilty of possession of methamphetamine and not guilty of aggravated participation in methamphetamine production. In March 2010, the trial court sentenced defendant to 10 years' imprisonment. Defendant appeals, arguing he was not proved guilty of possession of methamphetamine beyond a reasonable doubt and his sentence was impermissibly disparate with respect to that of his codefendant, Amy E. Rives. We disagree with defendant and affirm.

¶ 2                              I. BACKGROUND

¶ 3    On August 7, 2009, while defendant was on "parole," or what is currently known as mandatory supervised release (MSR), in rural Jersey County, agents from the Illinois State Police Meth Response Team searched an apartment defendant had registered with his parole officer as his permanent residence. The agents intended to conduct an MSR-compliance check because pharmacy records showed defendant had made several purchases of pseudoephedrine in previous months at a local Walgreens. The Walgreens logs did not show defendant purchased an unlawful quantity of pseudoephedrine in any 30-day period, but defendant's name also appeared on logs from other pharmacies and his activities raised a suspicion that he was involved in methamphetamine production or use.

¶ 4    After agents knocked on the door of the residence for approximately 5 to 10 minutes, defendant answered. Codefendant Rives, who was also on MSR, was in the bathroom. In the course of the ensuing search, agents found items associated with the production and use of methamphetamine. These included hypodermic needles found behind the refrigerator; "foilees" (paraphernalia related to methamphetamine use) concealed behind a picture hung on the wall; a razor blade stored in the corner of a picture frame that appeared wet; wet coffee filters suspected to have been used in methamphetamine production; and a wet, burnt pseudoephedrine blister pack and box. Outside the residence, in defendant's truck, agents

-2-

found a cut piece of a garden hose that they suspected was used for procuring anhydrous ammonia. Some of these materials were deemed hazardous and were destroyed. Others were preserved as evidence. Tests on one of the foilees revealed it contained 0.1 grams of methamphetamine, a trace amount.

¶ 5    Later on August 7, 2009, defendant and Rives were each charged with one count of possession of less than five grams of methamphetamine (720 ILCS 646/60(a) (West 2008)), a Class 3 felony (720 ILCS 646/60(b)(1) (West 2008)), and one count of aggravated participation in methamphetamine production (720 ILCS 646/15(b)(1)(A) (West 2008)), a Class X felony (720 ILCS 646/15(b)(2) (West 2008)). Rives later pleaded guilty to possession of methamphetamine. Pursuant to the terms of her plea bargain, Rives was sentenced to two years' imprisonment and the State dropped the charge of aggravated participation in methamphetamine production.

¶ 6    In February 2010, defendant proceeded to a two-day jury trial on both charges. Witnesses for the State testified to the events as described above. They also testified regarding the execution of the search and the relevance of items found in the residence that were seized or destroyed. Meth Response Team special agents Greg Cowell and Mike Fisher testified agents suspected that evidence was being destroyed or concealed during the 5 to 10 minutes before defendant answered the door. In particular, Agent Cowell testified no more than 10 minutes would have been needed to flush other items associated with methamphetamine production down a toilet; Agent Fisher testified, "Five to seven to ten minutes is [an] extraordinary amount of time to hide things." The agents testified they suspected the pseudoephedrine box and blister pack were likely burned in an effort to destroy evidence and the coffee filters were rinsed to eliminate any trace amounts of methamphetamine. No methamphetamine was detected except in the foilee that was tested; however, none was expected to be found anywhere else due to the condition of the items when they were found. Agent Fisher testified that no more than trace amounts of methamphetamine were found because, he suspected, defendant and Rives used the rest. Based on his experience and the materials recovered during the search, Agent Fisher testified he believed the residence was used for some stage of methamphetamine production.

¶ 7    The defense included testimony by Rives and by defendant's daughter, Jacqueline Scott. Their testimony showed defendant had lived in the residence for some time before he moved in with Rives about 1 or 1 1/2 months before August 7, 2009. Defendant left the apartment to remove himself from the continual recreational drug use by Jacqueline and others that occurred there. On July 13, 2009, after defendant had moved, Jacqueline was arrested on drug charges. The apartment was searched, and officers found cocaine, cannabis, and related paraphernalia. Jacqueline observed that search but did not see any officer search behind the pictures hung on the walls or in the kitchen trash bag. Defendant's remaining possessions at the apartment, which he had packed in a box he left under the bed, were searched, but no contraband was discovered with them.

¶ 8    Although, due to her arrest, Jacqueline was not present at the apartment between July 13 and August 7, 2009, Jacqueline testified the apartment was accessible to nonresidents. A key had been stolen by an unknown person. The lock on the front door was easily jimmied with a driver's license. Once, Jacqueline had returned home to find that someone had entered

while she was gone; she found items she associated with manufacturing methamphetamine, including disassembled batteries and empty Sudafed packaging.

¶ 9    Regarding the materials seized on August 7, 2009, Jacqueline testified the coffee filters had been in the trash can since before she was arrested. She testified the razor blade found in the picture frame was hers; she used it when she lived in the apartment to cut lines of drugs. Jacqueline's testimony regarding the prior presence of the picture frames, coffee filters, and razor blade was refuted by Jersey County sheriff's deputy Michael Ringhausen, who conducted the July 13, 2009, search.

¶ 10    Rives testified neither she nor defendant knew methamphetamine was present in the apartment when it was searched on August 7, 2009. She testified defendant had returned to live in the apartment only a day or two earlier, when she had asked defendant to move out of her residence, and she was at the apartment that morning to ask defendant for a ride to work. She explained that she was using the restroom and defendant was getting dressed when the agents arrived. Rives testified she did not possess the methamphetamine that was found during the search but pleaded guilty to the charge because she expected to be returned to prison for an MSR violation regardless of the outcome of the prosecution.

¶ 11    Following the trial, the jury found defendant guilty of possession of less than five grams of methamphetamine and not guilty of aggravated participation in methamphetamine production.

¶ 12    In March 2010, the trial court held a sentencing hearing. Due to his prior convictions for possession of a controlled substance and possession of a methamphetamine precursor, defendant was eligible for an extended term of up to 10 years. Evidence showed that Rives, who had already been sentenced to two years' imprisonment in exchange for her guilty plea, had six prior felony convictions. The State argued defendant should be sentenced to the maximum, 10-year term due to the extent and persistence of defendant's involvement with methamphetamine production and use. Defendant argued, in light of Rives's two-year sentence, the nonviolent nature of defendant's prior crimes, and the minuscule amount of methamphetamine recovered, that he deserved the minimum sentence. The court, noting the seriousness of the charges and defendant's MSR status, past failure to avail himself of drug-treatment programs offered in prison, and unwillingness to take responsibility for his crime in this case, sentenced defendant to 10 years' imprisonment.

¶ 13    Later that month, defendant filed a motion to reconsider sentence. Defendant noted the disparity between his and Rives's sentences and argued the trial court had punished defendant for exercising his constitutional right to pursue trial. In April 2010, the court denied defendant's motion to reconsider sentence.

¶ 14    This appeal followed.


¶ 15                                II. ANALYSIS
¶ 16                         A. Sufficiency of the Evidence
¶ 17    Defendant first argues the State failed to meet its burden of proving him guilty of possession of less than five grams of methamphetamine beyond a reasonable doubt. We

disagree.

¶ 18    When considering an argument regarding the sufficiency of the evidence to convict, we will affirm if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). Reversal is warranted only when the State's evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of [the] defendant's guilt." *Id.* at 542, 708 N.E.2d at 370.

¶ 19    A person is guilty of possession of methamphetamine if he "knowingly *** possess[es] methamphetamine or a substance containing methamphetamine." 720 ILCS 646/60(a) (West 2008). In drug-related cases in general, the element of possession requires "[the] defendant's knowledge of the presence of the narcotics and his immediate and exclusive control over them." *People v. Morrison*, 178 Ill. App. 3d 76, 90, 532 N.E.2d 1077, 1086 (1988). "Possession can be actual or constructive." *Id.* Actual possession exists where the defendant exhibits "some form of dominion over the unlawful substance, such as trying to conceal it or throw it away." *Id.* Constructive possession is shown where the defendant exercises "no actual personal present dominion over the narcotics, but there is an intent and a capability to maintain control *** over them." *Id.* For example, "[w]here narcotics are found on the premises rather than on a defendant, constructive possession may be inferred from facts showing that he once had physical control with intent to exercise control in his own behalf, he has not abandoned the drugs and no other person has obtained possession." *People v. McLaurin*, 331 Ill. App. 3d 498, 502, 772 N.E.2d 296, 300 (2002). "[E]vidence establishing constructive possession is often wholly circumstantial." (Internal quotation marks omitted.) *People v. Minniweather*, 301 Ill. App. 3d 574, 580, 703 N.E.2d 912, 916 (1998).

¶ 20    In this case, the evidence was sufficient to support a finding of defendant's constructive possession of the recovered methamphetamine. A reasonable juror could have inferred that defendant exhibited an intent and opportunity to continue exercising dominion over the methamphetamine by concealing it and attempting to destroy related paraphernalia and trace evidence before he answered the door. Knowing they were used in relation to illegal drugs, defendant had an opportunity and a motive to rinse the coffee filters and the razor blade, to attempt to burn the pseudoephedrine packaging, to dispose of these materials in the trash, and to conceal the foilees behind a picture frame. That defendant and Rives were the sole occupants of the apartment for the day or two leading up to the search indicates they were responsible for rinsing the coffee filters and the razor blade and burning the pseudoephedrine packaging. Testimony showed other drug-related items may have been flushed down the toilet. Defendant and Rives's attempted destruction and concealment of these items is circumstantial evidence of their possession or concealment of the recovered narcotics. Despite the circumstantial nature of the evidence, the inference that defendant possessed the methamphetamine was not so unreasonable as to preclude the jury's guilty verdict.

¶ 21                                    B. Sentencing Disparity

¶ 22    Defendant next argues his sentence was impermissibly disparate with respect to Rives's sentence. We disagree.

-5-

¶ 23 "[T]he trial court has broad discretionary powers in imposing a sentence [citation], and the trial court's sentencing decision is entitled to great deference [citation]." *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). Accordingly, "absent an abuse of discretion by the trial court, the sentence may not be altered on review." *Id.* at 209-10, 737 N.E.2d at 629.

¶ 24 "Arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible. [Citations.] However, the mere disparity of sentences does not, by itself, establish a violation of fundamental fairness." *People v. Caballero*, 179 Ill. 2d 205, 216, 688 N.E.2d 658, 663 (1997). Rather, a permissible sentencing disparity may be "warranted by differences in the nature and extent of the concerned defendants' participation in the offense." *Id.* A disparity may also be justified by differences in the codefendants' character, criminal history, and potential for rehabilitation. *People v. Foster*, 199 Ill. App. 3d 372, 393, 556 N.E.2d 1289, 1303 (1990).

¶ 25 In general, "[a] sentence imposed on a codefendant who pleaded guilty as part of a plea agreement does not provide a valid basis of comparison to a sentence entered after a trial." *Caballero*, 179 Ill. 2d at 217, 688 N.E.2d at 664. This is because "a trial court may properly grant leniency to the defendant who pleads guilty and thereby insures prompt and certain application of correctional measures, acknowledges his guilt, and demonstrates a willingness to assume responsibility for his conduct." *Foster*, 199 Ill. App. 3d at 393, 556 N.E.2d at 1303. Moreover, we observe that a trial court's determination whether to ratify a plea agreement struck through negotiations between a defendant and the State differs qualitatively from its finding of an appropriate sentence following a trial and a sentencing hearing.

¶ 26 Defendant cites four cases in which the appellate court found a defendant's sentence imposed after trial was impermissibly disparate with respect to a codefendant's sentence who pleaded guilty: *People v. Milton*, 182 Ill. App. 3d 1082, 538 N.E.2d 1227 (1989); *People v. Daniels*, 173 Ill. App. 3d 752, 527 N.E.2d 993 (1988); *People v. Jackson*, 145 Ill. App. 3d 626, 495 N.E.2d 1207 (1986); and *People v. Bishop*, 60 Ill. App. 3d 940, 377 N.E.2d 585 (1978). Of these, only the court in *Milton* considered the codefendant's guilty plea in its analysis of the sentencing disparity. The others are therefore unpersuasive.

¶ 27 In *Milton*, 182 Ill. App. 3d at 1093-95, 538 N.E.2d at 1234-35, the Second District Appellate Court found the defendant's 30-year sentence imposed following a trial was excessive in comparison to his codefendant's 8 1/2-year sentence imposed in exchange for a guilty plea. While "the facts that [the codefendant] was not armed, pleaded guilty to the offense, and agreed to testify against the defendant, if necessary," justified sentencing the defendant more harshly than the codefendant, the court found, the 21 1/2-year difference was impermissible. *Id.* at 1095, 538 N.E.2d at 1235. The court reduced the defendant's sentence to 12 years' imprisonment. *Id.* at 1096, 538 N.E.2d at 1236.

¶ 28 In *People v. Garcia*, 231 Ill. App. 3d 460, 479, 596 N.E.2d 1308, 1321-22 (1992), the Second District discussed *Milton* in its analysis of the defendant's sentencing-disparity argument. In *Garcia*, 231 Ill. App. 3d at 478-79, 596 N.E.2d at 1321-22, the court found no abuse of discretion in the trial court's sentence of the defendant to 45 years' imprisonment, notwithstanding sentences of 25 years and 4 years given to codefendants in exchange for

their guilty pleas. Discussing *Milton*, the court concluded the defendant's sentence in *Milton* was reduced because of factors other than a comparison with the codefendant's sentence. Specifically, the *Garcia* court stated, "Among those circumstances [leading the appellate court in *Milton* to conclude the defendant's sentence was excessive] were [the] defendant's youthful age of 20, his lack of a prior record, the fact that the victim was not injured, and the trial court's reliance upon dubious factors." *Id.* at 479, 596 N.E.2d at 1321. "In light of the above," the *Garcia* court concluded, "the imposition of a maximum sentence in *Milton* appears to have been excessive *regardless of any comparison with the codefendant's sentence*. \*\*\* We do not believe that *Milton* modifies the general rule that a sentence imposed after a guilty plea does not form a valid basis of comparison with respect to a sentence imposed after a trial." (Emphasis added.) *Id.* at 479, 596 N.E.2d at 1321-22. The court in *Garcia* "adhere[d] to that rule" in concluding no abuse of discretion occurred with respect to the disparate sentences of the defendant and his codefendants. *Id.* at 479, 596 N.E.2d at 1322.

¶ 29    In light of *Garcia*, we question the relevance of *Milton* in a sentencing-disparity analysis. The general rule–that a sentence imposed following a guilty plea provides no valid basis for comparison with respect to a sentence imposed following a trial–persists. Accordingly, we reject defendant's position in this case that a comparison with Rives's sentence can establish that defendant's sentence is excessive. As defendant does not argue that his sentence is excessive in an absolute sense, but merely in comparison to Rives's sentence, we find no abuse of discretion in the trial court's sentencing defendant to 10 years' imprisonment.

¶ 30                                    III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 32    Affirmed.