THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. A.J. GANT, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. A.J. GANT, Defendant (The People *ex rel.* Thomas J. Difanis, State's Attorney, Petitioner-Appellee, v. Items Seized at 1405 Garden Hills, Respondent-Appellant).

Fourth District   Nos. 4—86—0011, 4—86—0311 cons.

Opinion filed December 4, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On September 19, 1985, defendant, A.J. Gant, was charged with the offenses of unlawful possession with the intent to deliver a controlled substance and unlawful possession with the intent to manufacture a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) and unlawful use of firearms by a felon (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1). After a trial by jury, defendant was convicted on December 16, 1985, of unlawful possession with intent to deliver a controlled substance and unlawful possession with intent to manufacture a controlled substance. He was subsequently sentenced to concurrent terms of 20 years' imprisonment for the two offenses. He has appealed, contending: (1) denial of his motion to suppress evidence was error; (2) the proof of his guilt was insufficient; (3) his right to confrontation was violated by hearsay evidence of his involvement in unrelated crimes; and (4) refusal of instructions tendered by him was error. This appeal has been given our case number 4—86—0011.

On January 31, 1986, the State filed petitions in the circuit court of Champaign County seeking forfeiture of certain items seized pursuant to a search warrant at the time of defendant's arrest. After a bench trial, an order of forfeiture was entered. Defendant also appeals this order, maintaining: (1) the statute upon which the forfeiture was based (Ill. Rev. Stat. 1983, ch. 56½, par. 1505) is unconstitutional; (2) the required showing of a nexus between the drug transaction and the properties forfeited was not made; and (3) the seizure violated his con-

stitutional rights. This appeal has been given our number 4—86—0311.

The two appeals have been consolidated. With a minor exception, we affirm in both cases.

On October 24, 1985, defendant filed a pretrial motion to suppress evidence seized from premises at 1405 Garden Hills in Champaign by law-enforcement officers at the time of defendant's arrest there. Defendant contended that (1) the allegations of the complaint upon which the warrant was issued concerned conduct too remote from the time of the complaint to show that contraband was likely to be present on those premises at that time, (2) the complaint did not indicate that a continuing crime was occurring on those premises, (3) the language of the search warrant issued upon the complaint was too broad, and (4) two automobiles and two motorcycles outside the house were improperly seized. Defendant's first claim of error arises from the denial of this motion. He raises the same issues here that he raised in the motion to suppress except that with reference to the breadth of the warrant.

The complaint for the warrant was signed and verified by James Davis, an investigator with the prosecutor's office, and an affiant with the assumed name of Ted Kelly. The complaint stated that (1) James Davis had known Kelly for approximately 12 years and that Kelly had provided reliable information leading to felony convictions on numerous occasions; (2) Kelly had known defendant for approximately 15 years and knew that he was currently living at 1405 Garden Hills, Champaign, Illinois; (3) Kelly had purchased one-half gram of cocaine for $50 from defendant at that address twice in the last month; (4) both of these purchases were police-controlled purchases; (5) field tests on the purchased substances showed them to be cocaine; (6) on one of those occasions, defendant answered the door with a revolver in his hand; (7) on at least one occasion, police officers saw defendant carrying a revolver as he walked through the front room of the house; and (8) defendant had formerly been convicted of the felonies attempt (murder), armed violence, and aggravated battery.

■ We consider first the question of whether the purchases Kelly stated he had made from defendant at the Garden Hills premises were shown to be sufficiently related in time to the date of the complaint to indicate that cocaine was likely to be on the premises at the time of the complaint. In *People v. Montgomery* (1963), 27 Ill. 2d 404, 189 N.E.2d 327, the Illinois Supreme Court held that probable cause existed for the issuance and execution of a search warrant where an affidavit which was executed on August 9, 1961, stated that the affiant saw narcotics in possession of the defendant on August 1, 1961. The

court indicated that the passage of time does have an effect upon the existence of probable cause but stated that there exists no hard-and-fast rule concerning the time within which a complaint for a search warrant must be made, except that it should not be too remote. (27 Ill. 2d 404, 405, 189 N.E.2d 327, 328.) In *People v. Holton* (1927), 326 Ill. 481, 158 N.E. 134, a 10-day delay between an alleged illegal sale of liquor and the presentation of a complaint for search warrant was held to not be an unreasonable time span to support a finding of probable cause that liquor was still being illegally sold on the premises.

A noted text, cited in *Montgomery*, states that when an affiant alleges in a complaint for search warrant that an offense occurred within a certain period of time, that statement must be treated as if the observation took place on the farthest remote date within the period. (162 A.L.R. 1406, 1413 (1946).) The same text states that an interval of less than 20 days had never been held to be unreasonably long and one of more than 30 days had always been held to be unreasonably long. (162 A.L.R. 1406, 1414.) Based upon the foregoing theory, we must view at least one of the sales described by Kelly as having occurred as long as 30 days prior to the presentation of the complaint, as the complaint's only time frame for the sales was that they took place within the last month.

If both sales are required to be considered in the light that they took place on the first day of a 30-day period prior to the presentation of the complaint, the time frame here is clearly at the outer limit of that which is permissible. However, while the two sales could have taken place on the same day, it would seem unlikely that they did. The described rule requiring consideration of the most remote date in the time period alleged is obviously a safeguard. When the degree of likelihood involved is only probable cause, an additional safeguard of assuming that *both* described events occurred on the most remote day is neither required nor appropriate.

Moreover, in *People v. Dolgin* (1953), 415 Ill. 434, 114 N.E.2d 389, where a complaint for search warrant set forth purchases of counterfeit cigarette tax meter stamps over a period of 45 days, a delay of 49 days between the last alleged sale and the presentation of a complaint for search warrant was held to not negate the existence of probable cause that the illegal activity was still in progress on the premises described. The court deemed the repeated nature of the activity to indicate that it would likely be continuing. The American Jurisprudence discussion of searches and seizures states in section 70, regarding the timeliness of the showing of probable cause, "[i]n determining whether the lapse of time has been unreasonable, heavy reliance will often be

placed upon the nature of the alleged offense, a greater lapse of time being permissible where the activity is of a continuous nature as distinguished from an isolated violation." 68 Am. Jr. 2d *Searches & Seizures* sec. 70, at 725 (1973), citing, *inter alia, People v. Dolgin* (1953), 415 Ill. 434, 114 N.E.2d 389.

The sufficiency of the complaint to show probable cause presents a close question because of the uncertainty of the time frame between the purchases and the presentation of the complaint. The indications of a continuing offense at the described premises are not as strong here as in *Dolgin*. However, the statement of more than one purchase having been made does indicate (1) a strong likelihood that both purchases were not as remote as 30 days or even 29 days from the presentation of the complaint, and (2) a greater likelihood that sales were still being made at the Garden Hills residence than if only one sale was alleged. Accordingly, we hold the showing of probable cause in the complaint to have been sufficient. We need not consider the State's assertion that the good-faith exception to the exclusionary rule set forth in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, is applicable here and justifies the seizure.

The search warrant authorized the search for and seizure of drug-related items found in the house or attached garage. No problem exists as to any items found in the house and later introduced into evidence. They were shown to be within the scope of the warrant. The law-enforcement officers also seized two automobiles, one found in the garage and one outside. They also seized two motorcycles found outside the house. All four of these vehicles were taken to a police station and held until the next day when a warrant was obtained for their search. We need not determine the propriety of the seizure of any of these vehicles except one motorcycle in which $6,100 in currency was found. No evidence of any substances was obtained from the other vehicles.

■ The evidence indicates that persons conducting the surveillance of the premises saw defendant place a rolled-up towel in the trunk of one of the motorcycles before the search of the premises was made. Based upon that observation and the substantial incriminating evidence found on the premises, the law-enforcement officers had probable cause to believe that seizable items were contained in the towel in that motorcycle. Because of the limited number of officers available to protect relevant items at the premises, exigent circumstances justified the officers removing the motorcycle to a police station until a search warrant could be obtained.

No error arose from the denial of the motion to suppress.

Discussion of other issues in case number 4—86—0011 requires a

consideration of the evidence, much of which was not disputed. Beginning on August 6, 1985, officers of the Champaign County Inter-Agency Task Force began a surveillance of the Garden Hills residence from locations in the neighborhood which permitted a view of the front door. Binoculars were used at times. In all, surveillance was conducted during eight different days and for a total of approximately 30 hours. Testimony was presented that 78 people were let into the house during that time and, on 42 of those occasions, defendant was the person who admitted them. Most stayed inside for only two to four minutes. The last period of surveillance occurred on the day the warrant was executed, from noon until approximately 8 p.m., during which time defendant was absent from 2 p.m. until 5 p.m. Defendant then returned, and he and his wife removed two cars from the driveway to the street. Shortly thereafter, defendant came from the house and put a small, white bundle in the trunk compartment of a motorcycle parked near the front door of the house. Defendant then drove one of the automobiles into the garage, and his wife reparked a van in the driveway.

At approximately 8 p.m., the house was raided by law-enforcement officers in execution of the previously mentioned search warrant. Cocaine and drug-related paraphernalia were found in the house. Money in the sum of $4,056 was found in pockets of three coats hanging in a closet and $150 was found in a mattress. After searching the previously described Honda motorcycle the next day, $6,100 was found in a towel in a compartment of that vehicle. Defendant was present at the time of the raid. Upon being searched, a wallet and two separate rolls of bills were found on him.

Defendant testified in his own behalf. Rather than denying the substance of the State's evidence, he gave an explanation generally consistent with much of that evidence and placed the blame on his wife, Jackie Gant, whom he described as a drug dealer. He testified to the following sequence of events. From January 1985 to April 1985, he was in the Champaign County jail for a traffic offense, during which time his wife withdrew $5,000 from his savings account without his permission. By the beginning of August 1985, she owed him $9,000 to $10,000. On April 18, 1985, he had entered into an agreement with Cary Grant, a Department of Criminal Investigation agent, whereby he would not "get into trouble" if he cooperated by "turning someone in" for a drug offense. The next day, his wife was arrested on a drug charge. Grant talked to defendant and his wife about how she could "get out of trouble." Defendant understood an agreement to have been made between Grant and defendant's wife whereby she would

sell drugs to others to "set them up" for arrest and act as an informant.

Defendant admitted that he knew drugs were being sold at the Garden Hills residence in April 1985, but claimed that all the paraphernalia belonged to his wife and that he understood that she "could do what she wanted to" because of her relationship with Grant. Defendant testified that he also was working with Grant at that time but that he knew that he could not sell cocaine or possess firearms because this would violate an agreement with Grant and he could be prosecuted for violation of the agreement. Defendant testified that he returned home at about 5 p.m. on the night of the raid and wrapped some money in a towel which he put into a compartment in his motorcycle. He maintained that his wife had given him the money in partial repayment of her debt to him.

Grant testified that he had spoken to defendant in the spring of 1985 concerning defendant's helping in a narcotics investigation. Grant also testified that defendant's wife, Jackie, had become an informant after her arrest for possession of cocaine on April 19, 1985, and that defendant had been told she had done so. According to Grant, Jackie gave him information which aided in a prosecution which was closed by late July 1985, at which time he told Jackie she was no longer needed as an informant.

■ Defendant argues that a reasonable jury could not have found his guilt to have been proved beyond a reasonable doubt because he was not shown to have done anything more than let people into the house and the evidence was strong that his wife was committing the possessory offense in regard to controlled substances. In order to convict defendant of such offenses, the State was required to prove beyond a reasonable doubt that defendant knew of the presence of the controlled substances in the house and that the substances were in his immediate and exclusive control. (*People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) However, when premises are under the control of an accused, the trier of fact may infer that the accused had both knowledge of the presence of the contraband and control thereof. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361, 363.) Moreover, here, defendant admitted knowledge of the existence of the controlled substances in the house. The required element of exclusive possession may be established even when the possession is joint. *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674.

The evidence is ample of the control by defendant of the premises

at the Garden Hills residence, which he owned. The evidence also showed that (1) defendant allowed most of the large number of short-term visitors into the house during the surveillance period and did so on occasions when his wife was absent; (2) on the day of the raid, while defendant's wife was gone, an officer saw defendant let a short-term visitor into the house then saw a light go on in a bedroom where the searching party found that cocaine was being processed; (3) the same officer thereafter saw a woman leaving with a small package in her hand; (4) one police officer saw defendant coming to the door with a gun in his hand (this was denied by defendant in his testimony); (5) at the time of the raid, defendant was alone with a police scanner monitoring police calls; and (6) $13,000 of the $14,456 seized during the search was found on defendant, in his coat pockets, or in his motorcycle.

■ Based on the evidence, the jury could (1) have applied the inferences of possession arising from control, (2) have determined, because of all of the circumstantial evidence of defendant's involvement in the operation taking place at the Garden Hills residence, that there was no other reasonable explanation than that he had, at least, joint possession of cocaine, and (3) have determined that he did so with the intent to both manufacture it and deliver it. In this manner, a reasonable jury could have concluded that defendant's guilt was proved beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

The testimony giving rise to defendant's claim of violation of his right to confrontation occurred during the prosecutor's cross-examination of Grant, who was called by defendant. Grant had explained on direct examination that he had entered into an agreement with defendant for him to give information to State law-enforcement officials. On cross-examination Grant testified that in return for defendant's agreement to furnish information, Grant had agreed that defendant would not be prosecuted for sales of cocaine, of which the prosecutor had some evidence. The State then asked Grant when the sales took place. The defense objected on the basis that statements made by Grant to defendant in regard to the agreement for defendant's aid as an informer were proper but that the nature of the investigation made of defendant was not. After an off-the-record conference out of the presence of the jury, the court overruled the objection. Grant then testified that purchases from defendant had been made at the Garden Hills residence in 1984 and early 1985 and that the sales were made using packages with ties and corners similar to those shown to have been seized

in the raid of August 31, 1985. Grant also testified that defendant denied to him his involvement in those alleged sales.

The record does not indicate the purpose for which the evidence was offered, but the defendant's objection did not mention hearsay or a violation of confrontation rights. Rather, it appeared to raise the issue of relevancy and materiality. The evidence of the strength of the case which the State had against defendant was relevant to show that defendant had agreed to cooperate with the State for that reason. The evidence tended to negate any inference that defendant was voluntarily continuing to cooperate at the time of the raid upon the Garden Hills residence. Upon this record, we do not find reversible error to have resulted. Our ability to rule on this matter is hampered by the parties' failure to make enough of a record of the proceedings out of the presence of the jury to enable us to know the full reason for the objection and the purpose for which the evidence was introduced.

■■ During the cross-examination of Grant, he also testified that when he arrested defendant's wife in April 1985, she first admitted that the cocaine in her possession belonged to her, but eventually stated that it belonged to defendant. No objection was made to the questions which elicited these answers and no motion was made to strike these answers. Defendant's post-trial motion did not raise the issue. No plain error resulted. Thus any error arising from this evidence was waived. *People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251; *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 857-58.

■■ Finally, we come to defendant's contention that error occurred in instructing the jury. The State and the defendant each tendered instructions in the form of Illinois Pattern Jury Instruction, Criminal, No. 17.10 (2d ed. 1981) (hereinafter IPI Criminal 2d) defining the nature of the offenses of possessing a controlled substance with the respective intents to deliver or manufacture. The defendant included the element of the unlawful nature of the possession in his instructions while the State did not. Over defense objection, the court selected the State's tender and refused that of the defendant.

Section 401 of the Illinois Controlled Substances Act provides in part:

"Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance." (Ill. Rev. Stat. 1985, ch. 56½, par. 1401.)

The indictment charged defendant with "unlawful possession." Section 302(c)(4) of the Illinois Controlled Substances Act states that State of-

ficers and employees may have lawful possession of a controlled substance "while acting in the lawful course of their official duties which requires possession of controlled substances." (Ill. Rev. Stat. 1985, ch. 56½, par. 1302(c)(4).) Defendant maintains that he introduced evidence that he was a confidential informant for the State at the time of the alleged offense and, therefore, had authority to possess the cocaine found on his premises by virtue of the provisions of section 302(c)(4).

The evidence does not support defendant's contention. Grant testified to a written agreement signed by defendant which was admitted into evidence. It expressly informed defendant that he had no authority to possess controlled substances. Defendant's testimony did not deny this. Thus, no issue was ever raised in regard to any authority that defendant might have had to possess cocaine. (See *People v. Allen* (1972), 50 Ill. 2d 280, 278 N.E.2d 762.) Moreover, courts have been reluctant to submit an issue to the jury as to whether certain conduct of a defendant was lawful because of the inherent danger of confusing the jury. (*People v. Lewis* (1969), 112 Ill. App. 2d 1, 10-11, 250 N.E.2d 812, 817.) No error resulted from the court's ruling on instructions.

■ Defendant's contentions in case number 4—86—0311 can be decided summarily. This court held the statutory proceedings for a forfeiture (Ill. Rev. Stat. 1983, ch. 56½, par. 1505) to be valid in *People v. LeShoure* (1986), 143 Ill. App. 3d 839, 493 N.E.2d 687. We stand on that decision. Defendant asserts that because our holding in *LeShoure* was based partly on the fact that the defendant there had received adequate notice, this case differs in that defendant's wife, Jackie Gant, who may have had some interest in the property seized, was not given notice. We do not deem the statute to be void because persons who might have some interest in the property are not given notice. Defendant has no standing to complain of any deprivation to his wife because of lack of notice. He made no motion to dismiss for lack of a necessary party, nor did he seek leave to have her joined.

■ At the forfeiture hearing, defendant produced an affidavit of his wife indicating that the money seized was hers and not related to drug transactions. However, $2,815 was taken from defendant's pants pockets, $4,056 was found in pockets of his coats hanging in the closet of a room where cocaine was being processed, and $6,100 was found in a compartment of defendant's motorcycle. The trial court could have properly concluded that the money had a proper nexus to the drug transaction involved. (*People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.) On the other hand, certain radio scanners and guns were taken from defendant by police. None of these items were within the provisions of section 505 of the Illinois Controlled Substances Act

(Ill. Rev. Stat. 1983, ch. 56½, par. 1505), which provides for forfeiture. They did not appear to be items "furnished, or intended to be furnished, in exchange for a substance in violation of this Act." (Ill. Rev. Stat. 1983, ch. 56½, par. 1505(5).) However, one of the guns was a sawed-off shotgun, which was contraband as defined by section 24—1(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(7)), and thus subject to forfeiture.

The sawed-off shotgun was properly forfeited. The scanners and the other guns should not have been forfeited. They must be returned to defendant unless they have been sold, in which case the proceeds of sale should be given to defendant. If defendant is not eligible to possess the weapons, they should be turned over to a designee of the defendant who is eligible to possess them. See *People v. LeShoure* (1986), 143 Ill. App. 3d 839, 493 N.E.2d 687.

Defendant has also raised the question of the constitutional propriety of the original seizure in these proceedings. We follow our ruling upholding the propriety of the seizure pronounced in case number 4—86—0011 upon which this case was predicated.

Except with regard to the scanners and guns other than the sawed-off shotgun, the order for confiscation was proper.

We affirm the judgments of conviction and sentence imposed in case number 4—86—0011. We affirm all aspects of the judgment appealed in case number 4—86—0311 except in respect to the forfeiture of the scanners and guns other than the sawed-off shotgun.

Pursuant to our power under the Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)) we modify the portion of the judgment in respect to the scanners and described guns to provide that (1) any such items shall be turned over to defendant if that may legally be done, (2) if that may not be done, any such items be delivered to any designee of defendant who may legally possess them, and (3) defendant be given the proceeds from any previous sale of such items. The cause is remanded to the circuit court of Champaign County in order for that court to make any rulings necessary to carry out the foregoing directions.

Affirmed in part, modified in part, and remanded with directions.

SPITZ, P.J., and WEBBER, J., concur.