THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESLIE W. VANLANDINGHAM, Defendant (Martha Vanlandingham, Intervenor-Appellant).

Fourth District   No. 4—91—0297

Opinion filed December 19, 1991.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Intervenor, Martha Vanlandingham, seeks to recover 20 weapons and personal property seized from her residence in connection with charges filed against defendant, Leslie Vanlandingham. The items were seized pursuant to two search warrants. When the seizures occurred, intervenor and defendant were roommates. At the time this appeal was filed, they were married. Defendant was charged with, and pleaded guilty to, unlawful possession of weapons by a felon. (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a).) The Champaign County circuit court entered an order forfeiting the weapons seized. At a sepa-

rate hearing, it denied intervenor's request for the weapons seized to be returned to her, but ordered the State return all other personal property to her. The court later amended its oral order and required the State to return only personal property currently within its control.

On appeal, intervenor contests (1) the propriety of the forfeiture, with respect to denial of the motion *in limine*; (2) the ruling permitting the State to contest her claim of ownership; (3) the rulings refusing to exclude as evidence in proceedings on her motion for return of the property (a) the weapons seized on executing a warrant which did not authorize the weapons' confiscation, and (b) a second undated search warrant; as well as (4) the trial court's alteration of its earlier order requiring all personal property to be returned to her. Intervenor contends because she owned the property, the court erred in forfeiting it. We reject her contentions and affirm.

To understand the nature of the issues intervenor raises, an overview of the relevant events which transpired follows.

## I. MATTERS LEADING TO THE FORFEITURE ORDER

On February 16, 1989, based on information provided by a confidential source, a judge issued a warrant authorizing the search of the home in which defendant and intervenor lived. The warrant authorized seizure of evidence related to the offense of possession of controlled substances with intent to deliver. The complaint described a controlled cocaine purchase from defendant by a confidential source, and noted defendant had two previous drug-related arrests. The confidential source also reported seeing easily accessible firearms in defendant's residence. Authorities also had tape-recorded conversations between defendant and the confidential source about weapons.

When authorities executed the warrant on February 17, 1989, they seized 20 weapons and items related to controlled substances. Defendant Leslie Vanlandingham was charged by informations with unlawful possession of a controlled substance with intent to deliver and unlawful possession of weapons by a felon. Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2); ch. 38, par. 24—1.1(a).

On February 21, 1989, pursuant to a second warrant, authorities again searched the residence of defendant and intervenor. A different judge issued this warrant. It was supported by information related to the offenses of burglary, possession of stolen property, and unlawful possession of firearms by a felon. The warrant complaint was dated February 21, 1991, but the warrant itself did not specify the day it was issued.

Pursuant to the two search warrants executed on February 17 and 21, authorities confiscated a total of 20 weapons, ammunition, and other personal property from the home in which intervenor and defendant lived, including property located in a safe which had been confiscated in executing the February 17 warrant.

On July 18, 1990, defendant pleaded guilty to the unlawful possession of weapons by a felon charge. As part of the plea agreement, the State dismissed the charge of unlawful possession of controlled substances with intent to deliver. Defendant agreed not to object to forfeiture of the weapons, and was sentenced to 12 months' probation. Although defense counsel stated defendant merely agreed not to object to forfeiture, the trial court observed defendant *agreed* to the forfeiture.

The trial court entered an order, pursuant to section 24—6(b) of the Criminal Code of 1961 (Code), forfeiting the weapons seized to the Champaign County Interagency Task Force (ITF). Ill. Rev. Stat. 1989, ch. 38, par. 24—6(b).

## II. Proceedings Related To Intervenor's Motion For Return Of Property

On July 27, 1990, intervenor filed a motion for return of the items seized, contending she owned the property forfeited. She argued defendant had no interest in the property.

Intervenor later filed a motion to compel the State to produce a document confiscated from the safe seized from her home. She claimed the document proved she owned the weapons. The State's record of items seized February 17, 1989, suggested such a document *may* have existed. However, the State could not locate any such document when intervenor requested a copy. After a hearing January 10, 1991, the court reserved ruling on the motion to compel until the hearing on return of the property.

Intervenor also filed a motion *in limine*. She argued (1) the State should be barred from contesting her ownership of the 20 weapons; and (2) in ruling on the propriety of the forfeiture order, the court should exclude evidence obtained by the February 17 and 21 search warrants. Hearings on the intervenor's motion took place on January 28 and 31, 1991. The court denied intervenor's motion *in limine*. It refused to bar the State from contesting who owned the weapons and property seized. In addition, it rejected her argument evidence from the searches should be excluded.

At the hearing on intervenor's motion, she testified she has been a licensed firearms dealer since late 1983. She stated she was the sole

proprietor of a firearm's dealership called "Urban Arms," and defendant held no interest in the dealership. The record indicates the 20 weapons seized included one XM-15 E2 rifle, one AK47 assault rifle, 10 M11 pistols, and eight M10 pistols.

The State produced a handwritten receipt dated September 25, 1988, and signed by intervenor in which she transferred the inventory of Urban Arms to defendant. At the hearing on intervenor's motion, intervenor admitted executing this document, but contended the transfer was temporary. She testified it was executed because she planned to travel. Her relationship with defendant was strained and he feared she would not return. The transfer would have enabled him to sell Urban Arms' inventory if she died in a plane crash or did not return.

Intervenor testified she and defendant executed a second document when she returned from her trip in early October 1988. This document purportedly transferred the entire interest of Urban Arms back to intervenor. Intervenor stated these documents were kept in the safe confiscated by authorities on February 17, 1989.

Kent Shove, intervenor's friend since childhood, and defendant's employee at the time in question, testified he had seen a document transferring Urban Arms back to intervenor. The document puzzled him because he knew intervenor owned the guns. He stated intervenor told him she owned Urban Arms as an asset to liquidate quickly if something happened to defendant. Intervenor later explained to Shove the earlier transfer to defendant occurred only because she was travelling.

In addition, a report made by an Urbana police officer responsible for inventorying all items seized from defendant's home February 17, stated:

> "The contents of the safe include, but are not limited to, the following: *** handwritten receipts placing the entire inventory of weapons and ammunition belonging to 'Urban Arms' in the possession of [defendant]. *Also, handwritten receipts placing the entire inventory of weapons and ammunition belonging to 'Urban Arms' to [intervenor].*" (Emphasis added.)

However, the State could not locate any document by which defendant transferred his interest in Urban Arms back to intervenor when she requested a copy in preparation for her motion for return of the forfeited property. During the January 10 hearing on intervenor's motion to compel the document's production, Officer Haig, author of the report, described the likelihood that the document existed and had been lost as "remote." He stated that while inventorying the papers

seized he may have misinterpreted one as a receipt in which Urban Arms was transferred to intervenor.

Officer Haig testified all items removed from the safe were photographed. None of the photographs represented any document transferring ownership of Urban Arms from defendant to intervenor. Neither the ITF nor the Federal Bureau of Alcohol, Tobacco, and Firearms (Bureau) had received a copy of such a document, though each had received copies of all documents relevant to the investigation.

Vanessa Horsman, a sergeant with the University of Illinois police department, testified she was present when the items were removed from the safe and photographed. She did not recall seeing any such document. She did, however, remember seeing a document in which intervenor transferred all interest in Urban Arms to defendant. In addition, the evidence log, which provides descriptions of all items seized February 17, does not list any document wherein defendant transferred Urban Arms to intervenor.

Intervenor testified she collected weapons as a "nest egg" for her future. Because she and defendant were not married at the time, the weapons were an investment which would provide needed assets if defendant died. According to her testimony, the "MAC-10's" were no longer produced, and were her private collection. Because the M11's were plentiful and not as valuable, she sold these.

On cross-examination, intervenor identified her signature on five forms which are to be completed when an individual purchases weapons from a firearms dealer. The forms did not include the identity of, or any other information about, a purchaser. On two forms, intervenor noted she personally knew the purchaser, although the forms did not yet identify the purchaser.

The State asked intervenor why she had a great deal of literature describing how to alter weapons from semiautomatic to automatic if she merely collected weapons. Although she seemed unwilling to recognize this information had been among the materials seized, she contended she kept all information she received. She also testified on cross-examination that her collection included a large inventory of holsters and accessories to better serve her Urban Arms' customers.

Charles Sharp and Paul Vido, special agents with the Bureau, testified that during the February 17 search of intervenor's home, she told them the weapons in the home belonged to defendant. Special Agent Vido stated that during the February 17 and the February 21 searches, intervenor seemed unfamiliar with the location and contents of the records which a federally licensed firearms dealer must retain.

According to Agent Vido, during the February 21 search, intervenor told him she was not interested in buying or selling weapons. She stated defendant asked her to become a firearms dealer because he was prohibited from obtaining a firearms dealer's license. Agent Vido and Troy Daniels, an investigator for the Champaign County sheriff's department, testified intervenor told them defendant was extremely interested in weapons.

Intervenor denied telling agents defendant owned the weapons or that she was a licensed firearms dealer only upon defendant's request. She also stated she appeared unfamiliar with the requisite records because the agents used different terminology to describe them.

The State introduced evidence defendant participated in operating Urban Arms. Urban Arms' records contained letters sent by defendant to other arms dealers, and correspondence from dealers to defendant. Under cross-examination, intervenor admitted correspondence from other arms dealers, other than invoices and receipts, was addressed to defendant. In addition, defendant was listed as the customer on a receipt received from another dealer.

At the close of the hearing, the court denied intervenor's motion for the return of the weapons and ordered the State to return other confiscated personal property to her. In announcing its order on January 31, the court stated: "With respect to the other personal articles which are obviously identifiable, specifically to Martha Vanlandingham—and there is no suggestion by the State here to the contrary—those items must be returned to her ***."

The State later informed the court it did not possess all the property which intervenor sought to have returned. The court altered its original oral order by written order filed March 14, 1991. This order required the return of personal property which "remain[ed] under the control and jurisdiction" of the authorities.

### III. PROPRIETY OF FORFEITURE ORDER

Intervenor first argues the court erred by approving the forfeiture of the weapons because its order was based on section 24—6 of the Code, and the State failed to establish the requisite elements.

Section 24—6 states:

"(a) Upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court.

(b) Any stolen weapon so confiscated, when no longer needed for evidentiary purposes, shall be returned to the person entitled to possession if known. After the disposition of a

criminal case and when a confiscated weapon is no longer needed for evidentiary purposes, and when in due course *no legitimate* claim has been made for such weapon, the court may transfer such weapon to the sheriff of the county who shall proceed to destroy it, or may in its discretion order such weapon preserved as property of the governmental body whose police agency seized the weapon, or may in its discretion order such weapon to be transferred to the Department of State Police ***." Ill. Rev. Stat. 1989, ch. 38, par. 24—6.

To justify forfeiture, the State must prove (1) defendant was convicted, (2) of an offense in which a weapon was used or possessed, and (3) intervenor did not show a legitimate claim to the weapons. Ill. Rev. Stat. 1989, ch. 38, par. 24—6.

Although the trial court concluded the State met this test by clear and convincing evidence, the parties agree the State only had to provide evidence sufficient to meet the civil standard of a preponderance of the evidence. (*People v. LeShoure* (1986), 143 Ill. App. 3d 839, 844, 493 N.E.2d 687, 690.) The State contends it not only met the preponderance standard, but proved each element by clear and convincing evidence.

In evaluating whether the forfeiture order was proper, the trial court viewed as most important whether intervenor had established a legitimate ownership claim to the seized property. It reasoned defendant had waived any interest in the property by agreeing to forfeit it as part of his negotiated plea. The court found defense counsel's semantics in stating defendant agreed not to object to forfeiture did not affect the defendant's *agreement* to the forfeiture order.

Because defendant waived his interest to the property, the court reasoned, it was not necessary to determine whether there was a conviction of an offense in which the weapon was used or possessed, or whether a close nexus was established between the offense and the weapon.

The court concluded forfeiture was proper because evidence established defendant owned the weapons. It viewed intervenor's interest as, at best, "tangential," and concluded she disclaimed an ownership interest during the searches when she told law enforcement officials defendant owned the weapons.

■ The State's evidence established the statutorily mandated elements. Defendant pleaded guilty to unlawful possession of weapons by a felon. The requirement of conviction and possession of the weapons by the offender is therefore met. (Ill. Rev. Stat. 1989, ch. 38, par. 24—6(a).) Defendant's conviction is based on his possession of the 20

weapons at issue. In addition, Kent Shove, who was called by intervenor as a witness, testified he saw weapons in her residence. Because defendant resided with intervenor, this, too, is evidence he possessed weapons.

Additional evidence which proved defendant possessed the weapons was testimony by two law enforcement officials that during the home searches intervenor had informed each of them independently that defendant owned the weapons.

Intervenor argues the weapons could not be forfeited because the State did not prove possession of the specific weapons was unlawful *per se*, or that they were used in the offense for which the owner was convicted. She contends *People v. Earl* (1984), 121 Ill. App. 3d 254, 459 N.E.2d 342, supports this view.

The trial court found it unnecessary to characterize the weapons as contraband *per se*, or derivatively based on use, as the *Earl* court discusses, because the crux of this case was whether intervenor could make out a legitimate claim to the weapons and establish she owned them. *Earl* simply provides no support for her.

In *Earl*, the court reasoned the rightful owner had a legitimate claim because the weapons were stolen. Other weapons which the court concluded should be returned were weapons not related to the offense of which defendant was convicted. (*Earl*, 121 Ill. App. 3d at 258, 459 N.E.2d at 345.) Intervenor does not contend the weapons were stolen from her or confiscated without her knowledge. It is also noteworthy that intervenor did not initiate a claim to the weapons until *after* defendant had pleaded guilty, agreed to the forfeiture, and received a sentence of probation.

As the State notes, intervenor incorrectly directs this court to two of its previous rulings. *People v. Gant* (1986), 150 Ill. App. 3d 180, 501 N.E.2d 355, addressed forfeiture of items under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1505(a)(5)), and not under the Code (Ill. Rev. Stat. 1989, ch. 38, par. 24—6). (*Gant*, 150 Ill. App. 3d at 190-91, 501 N.E.2d at 363.) In *LeShoure*, the State did not seek forfeiture because of any connection between the weapons seized and the offense for which defendants were convicted. *LeShoure*, 143 Ill. App. 3d at 845, 493 N.E.2d at 690-91.

In this case, contrary to intervenor's contentions, the State established a connection between defendant's conviction for unlawful possession of weapons by a felon and the weapons he possessed. These weapons formed the basis for defendant's conviction. The weapons were unlawfully possessed by defendant and were forfeited because

he *agreed* to that forfeiture. The agreed forfeiture helps to establish the connection. Intervenor had to prove she owned the weapons.

The State established, by at least a preponderance of the evidence, that intervenor had no legitimate claim to the weapons seized. (Ill. Rev. Stat. 1989, ch. 38, par. 24—6(b); *LeShoure*, 143 Ill. App. 3d at 844, 493 N.E.2d at 690.) The trial court concluded the State's evidence convinced it "beyond a doubt" she had no ownership claim to the weapons. It is well settled the trial court determines the credibility of witnesses and the sufficiency of evidence. (*People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.) The trial judge was in a superior position to evaluate the evidence and the credibility of witnesses. *People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817.

Law enforcement officials testified intervenor disclaimed any ownership interest in the weapons during the searches. This testimony was in contrast with the testimony of intervenor and her witness as to her ownership. However, intervenor's only witness was a longtime friend of hers and a previous employee of defendant. We note defendant did not testify on behalf of his wife's ownership interest in the weapons.

Intervenor contended the weapons collection was an investment to provide her with money if defendant died. One might envision a collection of weapons displayed in an illuminated glass case to emphasize unique qualities of each weapon. Or perhaps a single, secured location to protect the collection and its future value. However, the record indicates the weapons were scattered throughout the house. Six of the 20 weapons were concealed under couches or tables, in coffee table drawers, and behind doorways. Two of the weapons which were scattered about were M10s—the weapons which intervenor testified she specifically collected to retain as investments. In addition, the document in which intervenor transferred her interest in Urban Arms to defendant proved he owned the weapons.

Other compelling evidence that intervenor's interest was only to enable defendant to traffic in weapons lies in the sales forms signed by her with no purchaser identified. This would allow defendant to sell weapons without intervenor's further participation. The trial court could reasonably infer from the evidence defendant owned all the weapons. The intervenor did not establish a legitimate ownership claim to the weapons.

IV. Motion *In Limine* Ruling Refusing To Bar State From Contesting Intervenor's Ownership Of Weapons

Intervenor next argues the court erred in permitting the State to

contest ownership of the weapons because it had lost or destroyed evidence which proved she owned the weapons. She contends the State lost or destroyed a receipt which showed that in October 1988, after she transferred her interest in Urban Arms to defendant, he transferred all interest in Urban Arms back to her. She contends the evidence conclusively established this document existed and was in the State's possession after the searches. The document would have established intervenor owned the weapons, and she thus had a legitimate claim to have the weapons returned to her. She argues *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679, presents a similar scenario. The court, she contends, should have presumed the document existed and had been seized because this was established by Officer Haig's testimony.

The State argues the evidence proves the document never existed. Assuming it did exist, the State contends the court properly refused to sanction it because, unlike the party in *Graves*, it did not intentionally destroy the document.

The trial court reasoned it would not sanction the State by barring it from contesting intervenor's ownership interest because, even if the document existed and had been seized, there was no evidence the State intentionally destroyed it. It reserved ruling until all evidence was presented and did not rule otherwise at the close of the hearing.

Whether to impose sanctions on a party for noncompliance with a discovery order is a matter within the discretion of the trial court. A court of review will not disturb that decision unless it is a clear abuse of discretion. (*Lubbers v. Norfolk & Western Ry. Co.* (1986), 147 Ill. App. 3d 501, 518, 498 N.E.2d 357, 369.) Sanctions should not be imposed unless the party's noncompliance was unreasonable. *Applegate v. Seaborn* (1985), 132 Ill. App. 3d 473, 474, 477 N.E.2d 74, 76.

■ The evidence did not establish the document existed and was seized. Officer Haig testified he did not remember the document and he may have mistakenly recorded such a document existed when inventorying the items seized in the February 17 search. No such document appeared in the photographs of all items seized. In addition, Sergeant Horsman did not see such a document when the seized items were removed from the safe and photographed. The law enforcement agencies which participated in the search and received copies of all documents did not have a copy of such a document. Another factor which indicates the document did not exist or was not seized is the fact it was not listed in the evidence log. The only witnesses who

testified the document existed were intervenor and a longtime friend of hers who was also previously employed by defendant.

The record supports the trial court's conclusion the disappearance of the alleged document—if it ever existed—was not intentional. The court's decision not to sanction the State by barring it from even disputing intervenor's claim was not an abuse of its discretion.

## V. Ruling Refusing To Exclude From Proceedings On Intervenor's Motion For Return Of Property Weapons Obtained In Executing, But Not Specified In, Warrant

Intervenor next argues the court erred in concluding that, although the February 16 search warrant authorized only the seizure of items related to the offense of possession of controlled substances, the plain view doctrine permitted seizure of the weapons. The trial court found authorities came upon the weapons in the process of executing a valid warrant to confiscate items related to controlled substances. The court reasoned that because the weapons became apparent during the search, the weapons were inadvertently discovered and were therefore subject to seizure under the plain view doctrine. It concluded the information provided by the confidential source about weapons afforded authorities only an "impression" that weapons might be on the premises. The possible presence of weapons is always of interest to law enforcement officials in executing warrants for any offense.

Intervenor argues because the warrant did not authorize the seizure of the 20 weapons, the State should not have been permitted to use the weapons as evidence against her in her attempt to reclaim the weapons. She contends because the State knew weapons would likely be found, the discovery of the weapons during the search was not inadvertent. She cites testimony by Walter Wolfe, a captain with Champaign County sheriff's department. She contends he stated the weapons found were "exactly" the type expected to be found. However, he testified some of the weapons found in defendant's residence were of the type which authorities could have expected to find considering information provided by the confidential source. Intervenor contends the Bureau participated in the search because authorities knew about weapons in the residence. She also argues information gleaned from tape-recorded conversations between defendant and the confidential source about weapons informed authorities about the weapons.

Intervenor relies on *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, in arguing the weapons could not be confiscated under the plain view doctrine because the officers entered the premises

searching for precisely the firearms they found, *i.e.*, the finding was not inadvertent. In *Madison*, the court held the plain view doctrine applies only when three conditions are met: first, the police must be properly on the premises through a warrant or an exception to the warrant requirement; second, the police must discover the evidence inadvertently, not knowing in advance the location of the evidence; and finally, the item must appear to be evidence of a crime, contraband, or otherwise subject to seizure. (*Madison*, 121 Ill. 2d at 208, 520 N.E.2d at 380-81.) The officers in *Madison* conducted an administrative search of a licensed salvage yard and confiscated business records which they deliberately searched for before obtaining a search warrant. *Madison*, 121 Ill. 2d at 199, 520 N.E.2d at 376.

■ As the trial court correctly noted, unlike *Madison*, authorities here entered defendant's home on February 17 pursuant to a valid warrant for items related to controlled substances. Information provided by the confidential source did not conclusively establish *where* weapons would be found. Authorities found additional illegal items, in plain view, in the course of a lawful search, and there is no reason to exclude those items.

Moreover, even if the weapons were not inadvertently discovered by authorities, the trial court ruled properly because inadvertency is no longer a requirement of the plain view doctrine. After *Madison*, the United States Supreme Court removed inadvertency as a requirement for the seizure of items in plain view. In *Horton v. California* (1990), 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301, the Court ruled a warrantless seizure of items in plain view is valid if two conditions are met. First, the incriminating character of the item seized must be " 'immediately apparent.' " (*Horton*, 496 U.S. at 136, 110 L. Ed. 2d at 123, 110 S. Ct. at 2308, quoting *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038).) As intervenor aptly notes, Captain Wolfe testified the ITF knew defendant had prior felony convictions. Once the weapons were seen in defendant's home, the officers had reason to seize the weapons. Since defendant was a felon, he could not have weapons in his home.

The second condition for finding items seized from plain view should not be excluded is that the officer has a lawful right of access to the items. The *Horton* Court stated:

"[I]f [the officer] has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found dur-

ing a lawful search for the first." (*Horton*, 496 U.S. at 139, 110 L. Ed. 2d at 124, 110 S. Ct. at 2309.) In this case, the officers entered defendant's home pursuant to a search warrant. Both conditions outlined in *Horton* to permit seizure of items in plain view were met.

The trial court could consider the weapons as evidence in the hearing on intervenor's motion. The weapons were properly seized under the plain view doctrine as described in *Horton*. The weapons were discovered during a lawful search authorized by a search warrant. In addition, when the weapons were discovered, it was immediately apparent to the officers the weapons constituted incriminating evidence.

## VI. RULING REFUSING TO EXCLUDE FROM PROCEEDINGS ON INTERVENOR'S MOTION, EVIDENCE OBTAINED IN EXECUTING AN UNDATED WARRANT

Intervenor next attacks the February 21 search warrant. She argues the warrant executed on February 21 was invalid because it did not include the specific day of the month in which it was issued. She contends the Urban Arms' records seized pursuant to the defective warrant should have been excluded as evidence in proceedings on her motion for return of property. She argues *People v. Taylor* (1990), 198 Ill. App. 3d 667, 555 N.E.2d 1218, is dispositive because it held section 108—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 108—4) requires properly executed warrants to include the time and date issued.

The trial court concluded the warrant was valid because the complaint was properly dated, and is typically presented to the judge the same day the warrant is issued. Similarly, the State contends because the warrant was *executed* on February 21 and the complaint contained the date, an omitted technicality should not bar the evidence. According to the State, the defects in *Taylor* were serious, unlike the defect here.

In *Taylor*, the warrant was issued over the phone, there was no record made of the phone conversation between the officer and the judge who orally authorized the warrant, and the judge could not have determined the complaint was written and under oath. *Taylor*, 198 Ill. App. 3d at 670, 555 N.E.2d at 1220.

A defect in a search warrant is immaterial if the search is otherwise justified. (*People v. Brinn* (1965), 32 Ill. 2d 232, 241, 204 N.E.2d 724, 730; *People v. Cox* (1971), 49 Ill. 2d 245, 248, 274 N.E.2d 45, 47.) The complaint in this case was dated February 21, 1991. The search was executed February 21, 1991. Common sense shows the warrant was also issued February 21, 1991. The warrant was exe-

cuted within the requisite time period. In addition, intervenor does not contend probable cause was lacking in the issuance of the warrant, or that there was police misconduct.

Although the specific day the warrant was issued was absent from the warrant, the purpose of the exclusionary rule would not have been served by prohibiting evidence related to ownership of Urban Arms. The evidence established the warrant was not stale and there was no police misconduct. In these circumstances, the trial court did not err in determining business records seized pursuant to the undated search warrant sought and executed on February 21, 1989, could be used in the proceeding on intervenor's motion involving forfeiture and confiscation, which was civil in nature.

## VII. The Court's Modification Of Its Order

Intervenor's final argument is the court improperly altered its January 31 order, which had required the State return all personal property to her, to only require the State to return all personal property it currently possessed. The court's written March 14 order directed the State to return all items "[w]hich remain[ ] in the custody of the Interagency Task Force and/or the Urbana Police Department."

Intervenor contends the evidence was unrebutted that all items of personal property outlined in her exhibit No. 2 were confiscated from her home during the searches; she testified all items listed in exhibit No. 2 were taken from her home during the searches. The State objected to the relevance of the testimony. The court overruled the objection, however, after intervenor's counsel explained the motion requested the return of *all* personal property confiscated. Intervenor also correctly notes the State did not file a motion for reconsideration and it never explained what happened to the missing property.

The State concedes that after the January 31 hearing, it informed the court of certain items which it could not return to intervenor because it did not have the items in its control.

■ It is impossible to determine from the record which items have not been returned or why. The descriptions of the items differ between intervenor's exhibit and the State's exhibit, which list the items the court ordered returned to intervenor in its written order filed March 14, 1991.

We therefore find it necessary to remand this case to the trial court to determine what items were not returned, why the items were not returned, and intervenor's remedy (if any) as to items of unreturned personal property which should have been returned.

The trial court did not err in ruling the weapons were properly forfeited. It also correctly ruled the State could contest intervenor's claim she owned the weapons. In addition, although not listed as to be seized in the February 17 search warrant, the weapons were properly seized. Intervenor's business records were also correctly considered as evidence although the February 21 search warrant was undated.

Accordingly, we affirm the trial court's rulings on all substantive issues raised. We remand, however, for further consideration of the State's obligation to return certain personal property to intervenor.

Affirmed, and cause remanded with directions.

GREEN, P.J., and LUND, J., concur.