NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200518-U

NO. 4-20-0518

FILED
March 11, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | De Witt County |
| NATHANIEL H. YANCEY, | ) | No. 19CF75 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Karle E. Koritz, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) the State presented sufficient evidence to prove defendant guilty of counts I and II of the information and (2) the record on appeal was inadequate to address defendant's claims of ineffective assistance of trial counsel.

¶ 2    Following a bench trial, defendant, Nathaniel H. Yancey, was found guilty of multiple drug charges and then sentenced to concurrently imposed terms of six and three years' imprisonment. Defendant appeals, arguing (1) the State failed to prove him guilty beyond a reasonable doubt of two of the charges and (2) his trial counsel provided ineffective assistance by not (a) filing a motion to suppress incriminating statements he made to a police officer and (b) moving for a directed verdict at the close of the State's case on one of the charges. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Charges

¶ 5        In June 2019, the State charged defendant by information with one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2018) (count I)) and two counts of possession of a controlled substance (720 ILCS 570/402(c) (West 2018) (counts II and III)). Counts I and II were based upon defendant's alleged possession of a substance containing cocaine, and count III was based upon defendant's alleged possession of a substance containing alprazolam. The charges stemmed from a traffic stop which occurred earlier that same month.

¶ 6                                    B. Bench Trial

¶ 7        Over a two-day period in February and March 2020, the trial court conducted a bench trial.

¶ 8                                    1. *State's Case*

¶ 9        In its case, the State presented testimony from three witnesses: (1) Jake Jostes, a police officer who initiated the traffic stop which resulted in the charges against defendant; (2) Thomas Anderson, a police officer who assisted Officer Jostes with the traffic stop; and (3) Joshua Stern, a qualified expert in drug chemistry who analyzed evidence submitted in this case. The State also presented (1) portions of an audio and video recording taken from a rear-facing camera inside Officer Anderson's patrol vehicle, (2) a baggie and a white chunky substance, (3) orange pills with "029" and "R" markings, and (4) a laboratory report. The following is gleaned from the State's evidence.

¶ 10       On June 16, 2019, at approximately 9:43 p.m., Officer Jostes conducted a traffic

stop of a vehicle after observing the vehicle traveling 76 miles per hour in a 55 mile-per-hour speed zone. The vehicle, which was a four-door sedan, had four occupants, three adults and one child. Defendant was seated in the backseat next to the child. After obtaining the names of the adult occupants, Officer Jostes returned to his patrol vehicle, called for assistance from Officer Anderson, and requested information from dispatch.

¶ 11    Shortly after being called, Officer Anderson responded to the scene of the traffic stop. At that point, Officer Jostes used a canine unit to perform a free-air sniff of the stopped vehicle. The canine alerted to the odor of illegal narcotics. Officer Jostes then had the adult occupants exit the vehicle.

¶ 12    The stopped vehicle was searched. Officer Jostes discovered a backpack in the backseat. The backpack contained an iPhone box, two functioning digital scales with white powdery residue, a box of plastic baggies, marijuana, and orange pills. At some point, Officer Jostes spoke with and searched defendant. Officer Jostes testified defendant told him the backpack "was his and everything inside belonged to him." Officer Jostes also testified defendant identified the orange pills as "Xanax." The search of defendant's person revealed he was in possession of multiple cell phones.

¶ 13    After being handcuffed behind his back, defendant was escorted to Officer Anderson's patrol vehicle. Officer Jostes testified both he and Officer Anderson inspected the backseat of Officer Anderson's patrol vehicle prior to securing defendant therein and found no contraband. Officer Anderson testified he had been in the backseat of his patrol vehicle prior to securing defendant therein and did not see any contraband.

¶ 14    The audio and video recording taken from the rear-facing camera inside Officer

Anderson's patrol vehicle, which was contained on a DVD identified in court as "People's Exhibit Number 1," shows Officer Anderson open the rear driver's side door to his patrol vehicle and then shine a light in the backseat prior to defendant being secured therein. After defendant is secured in the vehicle and its doors are shut, defendant can be seen lifting himself and attempting to grab something from behind him. He then appears to throw something in the direction of the rear driver's side floorboard, and a noise is heard as if something hit the floorboard. Defendant then appears to lift his leg over the seat to move the item that had landed on the floorboard.

¶ 15 The audio and video recording also shows defendant removing a cell phone from his pocket and then using it to make multiple phone calls. He eventually connects with someone on the other line and speaks with that person as well as another person who seems to be his girlfriend. During the phone call, defendant states: (1) he was arrested "for possession of Xans"; (2) he was arrested for "possession of Xanax"; (3) he was "going for the Xans"; (4) "I know they found the scale, and they found some baggies"; and (5) "I think they are going to find the scale and the shit up in there." He also tells his apparent girlfriend, in the event she is asked any questions, "Don't tell nobody nothing." Following his phone call, defendant requests assistance from an officer to adjust his pants.

¶ 16 After defendant is removed from the patrol vehicle and provided the requested assistance, he is secured back inside the patrol vehicle. At that point, Officer Anderson, who assisted with securing defendant inside the patrol vehicle, noticed a baggie containing a white chunky substance "in plain view" on the rear driver's side floorboard. Defendant denied ownership of the baggie.

¶ 17 The baggie and the white chunky substance were secured and submitted for

laboratory testing. The substance was found to weigh 6.4 grams and contained cocaine. The baggie was found to have a fingerprint belonging to a named person other than defendant. Officer Anderson did not recall any stops he had prior to the traffic stop or whether anybody else had been in the backseat of his patrol vehicle.

¶ 18 Officer Jostes testified about his training and experience. In addition to the general training he had to be a police officer, Officer Jostes had been trained in identifying drugs and facts indicative of an intent to deliver drugs. He completed an eight-hour class on "street-level interdiction," a three-day course called "Desert Snow criminal interdiction," and a three-day seminar on "proactive criminal enforcement." Officer Jostes estimated he had completed more than 500 stops involving drugs since September 2016.

¶ 19 Officer Jostes testified, based on his training and experience, several facts, including the baggies, multiple cell phones, two functioning digital scales with residue, and the quantity of the substance containing cocaine, indicated an intent to deliver by defendant. Officer Jostes also testified "Xanax" was a common name for alprazolam, a controlled substance, and he had determined the orange pills were "Alprazolam 0.5" based upon the markings on the pills.

¶ 20 During the cross-examination of Officer Anderson, the following inquiry occurred by defendant's counsel:

"Q. While he was back at the vehicle that he was originally

in that was stopped, were you also present there at the vehicle?

A. Yes.

Q. Were you present at the vehicle when he was removed

from that vehicle?

A. I'd have to review the video, but, yes, I was there present for that.

Q. Okay. When he was removed from the vehicle did you observe anybody search him?

A. I'd have to review the video on that.

Q. Is there video of that that you could review and refresh your recollection?

A. I'm assuming there is, from the patrol cars.

Q. This video that was reviewed here just a few moments ago, People's Exhibit Number 1, is that the only video that exists of this stop?

A. I'm assuming there's another video, probably, from the initial traffic stop, which would be Sergeant Jostes' patrol vehicle.

Q. Okay.

[Counsel]: I have no further questions of this witness your Honor. Thank you."

¶ 21                                    2. *Recess*

¶ 22            Following the close of the State's case, the trial court held a brief recess to address an unrelated case and to allow defendant's counsel the opportunity to speak with defendant. After the recess, defendant's counsel informed the court he had spoken with defendant and defendant was going to testify. Neither the docket entry nor the trial transcripts indicate defendant's counsel moved for a directed verdict at the close of the State's case.

¶ 23                                    3. *Defendant's Case*

¶ 24          Defendant testified in his defense. The following is gleaned from his testimony.

¶ 25          Defendant, a convicted felon, described himself as a "functioning" drug addict who preferred cocaine but would use any drugs available to him. At the time of the traffic stop which resulted in the charges against him in this case, defendant was under the influence of "marijuana, Xanax, cocaine, and crack cocaine."

¶ 26          Defendant acknowledged the items found in the backpack during the traffic stop, including the "Xanax," belonged to him. He asserted the items were for his personal use and he did not sell drugs. Defendant explained he used the digital scales to assure he consumed only a certain dosage of a substance. Defendant denied ownership of the baggie and the white chunky substance found in the backseat of Officer Anderson's patrol vehicle.

¶ 27          Defendant identified the orange pills admitted into evidence as the pills which belonged to him. Defendant also identified the orange pills as "Xanax pills." He explained Xanax is referred to as "Peach" on the streets because of its color.

¶ 28          With respect to being in possession of multiple cell phones, defendant testified one of the cell phones, a "Tracfone," was a phone he found earlier that day and the other two cell phones, both iPhones, were phones he had taken from his girlfriend to use in the event he needed to contact someone for a ride. Defendant later testified one of the iPhones belonged to him and did not work.

¶ 29          Defendant testified about the various searches of his person during the traffic stop. The first search occurred when he was behind the stopped vehicle. Defendant asked the officer conducting the search if he was obligated to consent to the search, to which the officer indicated

in the affirmative because the officer had smelled the odor of marijuana. Defendant, who was afraid he would be charged with "resisting" if he did not agree, allowed the search of his person. The officer emptied defendant's pockets and then had him take off his shoes. The officer searched defendant "from the heel up." The search, which defendant described as "thorough," lasted approximately two-and-a-half minutes. The second search occurred when defendant was in front of an officer's patrol vehicle. The search occurred after the officer found the pills and handcuffed defendant. The third search occurred before defendant was placed in the backseat of a patrol vehicle. Defendant described the third search as being similar to a "strip search."

¶ 30    Defendant testified about his identification of the pills during the traffic stop. After the officer found the pills, defendant was handcuffed. At that point, defendant asked the officer why he was being arrested, to which the officer reportedly said, "possession of a controlled substance." Defendant responded, "[D]amn, the Xanax," to which the officer said, "wait a minute," and then read him his "*Miranda* rights."

¶ 31    Defendant testified about his actions and statements which could be seen and heard in the portions of the audio and video recording admitted into evidence. Defendant explained his movements were to fix his pants and obtain a cell phone from his pocket. Defendant explained his statements concerned the fact the police officer had found some pills.

¶ 32                    4. *Trial Court's Findings*

¶ 33    After considering the evidence and arguments presented, the trial court found defendant guilty of counts I through III of the information.

¶ 34                    C. Posttrial Proceedings

¶ 35    In June 2020, the trial court merged the guilty finding on count II with the guilty

finding on count I and then sentenced defendant to concurrently imposed terms of six years' imprisonment on count I and three years' imprisonment on count III. Thereafter, defendant filed a motion for a new trial and a motion to reconsider the sentence. In his motion for a new trial, defendant, through counsel, argued (1) the State failed to prove him guilty beyond a reasonable doubt of all the charges and (2) the court "erred in denying Defendant's motion for a directed verdict of not guilty at the close of the State's evidence." At a hearing on defendant's posttrial motions, defendant, through counsel, repeated his written arguments to the court. As to his claim concerning a directed verdict, defendant's counsel specifically argued: "It's my client's contention *** that the Court erred in denying our motion for directed verdict at the close of the State's evidence." In responding to and ruling on defendant's motion for a new trial, neither the State nor the court specifically addressed the propositions that defendant had moved for a directed verdict at the close of the State's case or that the court had denied that motion. The court denied both of defendant's posttrial motions.

¶ 36        This appeal followed.

¶ 37                                II. ANALYSIS

¶ 38        On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt of counts I and II of the information and (2) his trial counsel provided ineffective assistance by not (a) filing a motion to suppress incriminating statements he made to Officer Jostes and (b) moving for a directed verdict at the close of the State's case on count III. In response, the State argues (1) it presented sufficient evidence to prove defendant guilty beyond a reasonable doubt of counts I and II of the information and (2) defendant's claims of ineffective assistance of trial counsel should not be considered on the record presented or be found to be meritless.

¶ 39      A. Defendant's Challenge to the Sufficiency of the Evidence

¶ 40    Defendant argues the State failed to prove him guilty beyond a reasonable doubt of counts I and II of the information. Specifically, defendant asserts the evidence did not sufficiently show he possessed the baggie containing cocaine found in the backseat of Officer Anderson's patrol vehicle. In support, defendant highlights the evidence showing (1) he was searched multiple times prior to being secured in the patrol vehicle, (2) the baggie had fingerprints from another named individual, (3) Officer Anderson was unable to recall whether anyone else had been secured in his backseat prior to the traffic stop, and (4) his repeated denial of ownership of the baggie containing cocaine while claiming possession of other incriminating items.

¶ 41    When presented with a challenge to the sufficiency of the evidence, "the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis and internal quotation marks omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22, 162 N.E.3d 252. "The trier of fact remains responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts." *People v. Harris*, 2018 IL 121932, ¶ 26, 120 N.E.3d 900. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876.

¶ 42    To prove defendant guilty of the offenses charged in counts I and II of the information, the State had to prove defendant possessed the baggie containing cocaine found in the backseat of Officer Anderson's patrol vehicle. 720 ILCS 570/401(c)(2), 402(c) (West 2018). This requires proof defendant knew of the presence of the controlled substances and had

" 'immediate and exclusive power over them.' " *People v. Scott*, 2012 IL App (4th) 100304, ¶ 19, 966 N.E.2d 340 (quoting *People v. Morrison*, 178 Ill. App. 3d 76, 90, 532 N.E.2d 1077, 1086 (1988)).

¶ 43    At trial, both Officer Jostes and Officer Anderson testified about inspecting the backseat of Officer Anderson's patrol vehicle prior to securing defendant therein and finding no contraband. The audio and video recording taken from the rear-facing camera inside Officer Anderson's patrol vehicle corroborates Officer Anderson's testimony. The audio and video recording further shows defendant attempting to grab something from behind him and then discard it in the direction of the rear driver's side floorboard. Shortly thereafter, Officer Anderson observes the baggie containing cocaine, a substance which defendant later admits to consuming prior to the traffic stop, in plain view on the rear driver's side floorboard of his patrol vehicle. Even considering the evidence which defendant highlights, we find the above evidence was more than sufficient for the trial court, as the trier of fact, to conclude defendant possessed the baggie containing cocaine found in the backseat of Officer Anderson's patrol vehicle. Absent any other argument, we find the State presented sufficient evidence to prove defendant guilty of counts I and II of the information.

¶ 44    B. Defendant's Challenges to His Trial Counsel's Performance

¶ 45    Defendant argues his trial counsel provided ineffective assistance by not (1) filing a motion to suppress incriminating statements he made to Officer Jostes and (2) moving for a directed verdict at the close of the State's case on count III. Specifically, defendant asserts, had counsel filed a motion to suppress and moved for a directed verdict, the motions would likely have been granted and changed the outcome of the trial, because (1) his incriminating statements were

made while he was subject to a custodial interrogation and before he was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), and (2) the State's evidence was insufficient to prove the *corpus delicti* of Xanax possession, where it consisted of only extrajudicial admissions and Officer Jostes's testimony that he had somehow been able to determine the pills' chemical makeup based on their markings.

¶ 46         "Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. Claims of ineffective assistance of counsel are analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Id.* To prevail on a claim of ineffective assistance, a defendant must show both: (1) "counsel's performance was objectively unreasonable under prevailing professional norms" and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). A defendant's failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Id.*

¶ 47         Defendant's first claim of ineffective assistance is based upon his trial counsel's failure to file a motion to suppress incriminating statements he made to Officer Jostes. We find a factual issue impedes our review of defendant's claim. In support of his claim, defendant relies on a second audio and video recording of the apparent traffic stop which was not admitted into evidence nor ever addressed by the parties or the trial court. The recording—as well as 10 photographs which were also not admitted into evidence nor ever addressed and the full audio and video recording taken from Officer Anderson's patrol vehicle—is contained on a DVD identified

as People's Exhibit Number 1, which has been made part of the record on motion of defendant's appellate counsel. Regardless of whether the second recording is properly part of the record, the record provides no indication that defendant's trial counsel was aware of the second recording. In fact, trial counsel's cross-examination of Officer Anderson suggests counsel was not aware of any additional recordings of the traffic stop. Without knowing if counsel was aware of the recording, any resolution of defendant's claim would require speculation. Accordingly, we conclude the record is inadequate to address defendant's first claim of ineffective assistance of trial counsel.

¶ 48    Defendant's second claim of ineffective assistance is based upon his trial counsel's purported failure to move for a directed verdict at the close of the State's case on count III. We again find a factual issue impedes our review of defendant's claim. In support of his claim, defendant relies upon the absence of any indication in a docket entry or the trial transcripts that his trial counsel moved for a directed verdict at the close of the State's case. The record shows, however, trial counsel made both written and oral posttrial arguments that the court erred in denying defendant's motion for a directed verdict at the close of the State's case, and neither the State nor the court addressed the propositions that defendant had moved for a directed verdict at the close of the State's case or that the court had denied that motion. Further, it is not beyond reason to believe counsel may have moved for a directed verdict during the unreported recess. Considering the entire record, it is unclear whether defendant's trial counsel moved for a directed verdict at the close of the State's case. Without knowing if counsel moved for a directed verdict, any resolution of defendant's claim would require speculation. Accordingly, we conclude the record is also inadequate to address defendant's second claim of ineffective assistance of trial counsel.

¶ 49	Because we conclude the record on appeal is inadequate to resolve either of defendant's claims of ineffective assistance of counsel, defendant may, if he so desires, pursue his claims through a petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). See *People v. Veach*, 2017 IL 120649, ¶ 46, 89 N.E.3d 366 ("[I]neffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim.").

¶ 50	C. State's Motion to Cite Additional Authority

¶ 51	As a final matter, the State, filing the briefing in this case, filed a motion to cite additional authority. The authority which the State seeks to cite concerns its argument on appeal that the second audio and video recording, the recording relied upon by defendant in support of his first claim of ineffective assistance of trial counsel, should not be considered by this court because it is not properly part of the record. Because we concluded the record provides no indication that defendant's trial counsel was aware of the second recording, we did not need to consider whether the recording was properly part of the record. Accordingly, we deny the State's motion as it is unnecessary to our disposition.

¶ 52	III. CONCLUSION

¶ 53	We affirm the trial court's judgment.

¶ 54	Affirmed.